UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. | : | |
| *Plaintiff* | : | |
| VS. | : | C.A. No.: 06-431/ML |
| CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER | : | |
| *Defendants.* | : | |

**DEFENDANTS CARTER BROADCASTING CORPORATION AND FAITH CHRISTIAN CENTER'S MOTION FOR SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIMS**

Now come the defendants, Carter Broadcasting Corporation ("Carter") and Faith Christian Center ("Faith"), and move for summary judgment of the plaintiff's claims against them pursuant to Rule 56 of the Federal Rules of Civil Procedure. The grounds for this motion are set forth in the accompanying Statement of Undisputed Facts and Memorandum of Law.

WHEREFORE, defendants, respectfully request that this Court:

a. Enter judgment in their favor on all claims; and

b. Grant such further relief as may be just and equitable under the circumstances.

Respectfully submitted,

CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER

By their Attorneys,

DAVID E. MAGLIO & ASSOCIATES, P.C.

/s/ David E. Maglio, Esq.
David E. Maglio, #3459
101 Dyer Street, Second Floor
Providence, Rhode Island 02903
Tel: (401) 831-5400
Fax: (401) 831-7979

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. | : | |
| *Plaintiff* | : | |
| VS. | : | C.A. No.: 06-431/ML |
| CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER | : | |
| *Defendants.* | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' INITIAL MOTION FOR SUMMARY JUDGMENT**

Defendants Carter Broadcasting Corporation ("Carter") and Faith Christian Center ("Faith") submit the following Memorandum of Law in Support of their Motion for Summary Judgment.

## I. INTRODUCTION

This is a breach of contract action brought by North American Catholic Educational Programming Foundation, Inc. ("NACEPF") against Carter. NACEPF has also brought claims for tortious interference against Faith. NACEPF is attempting to impose liability on Carter for breach of contract and on Faith for tortious interference with this contract, despite the lack of any competent evidence that a contract between Carter and NACEPF existed. Therefore, this matter is ripe for summary judgment.

## II. ARGUMENT

### A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure requires a motion for summary judgment to be granted "if the pleadings…together with the affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). For an issue to be considered "genuine," "the evidence viewed in a light most favorable to the non-moving party 'must be sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side'." *Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173, 181 (D.R.I. 2001) (*quoting Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).) In order to defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corporation*, 475 U.S. 574, 587 (1986). Instead, the non-moving party must provide affirmative evidence demonstrating a differing version of the truth than presented by the movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* At 249-50.

Summary judgment is a crucial means of filtering out cases that should not go to trial. One of the principal purposes of summary judgment, "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrette*, 477 U.S. 317, 324 (1986). Finally, the United States Supreme Court has stated, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, emphasis in original.

**B. As a matter of law, there is no competent admissible evidence that a contract existed between NACEPF and Carter.**

**1. The Applicable Standard**

Under Rhode Island contract law, in order to have a legal contract there must be an offer, acceptance and consideration. *Sheehan v. Richardson*, 315 B.R. 226, 240 (D.R.I. 2004), *citing Filippi v. Filippi*, 818 A.2d 608, 623-24 (R.I. 2003)[1]. To establish that either an express or an implied contract exists, "a litigant must prove mutual assent or a 'meeting of the minds between the parties.'" *Opella v. Opella*, 896 A.2d 714, 720 (R.I. 2006), citing *Mills v. Rhode Island Hospital*, 828 A.2d 526 (R.I. 2003). In fact, Corbin on Contracts states that, "A court cannot enforce a contract unless it can determine what it is. It is not enough that the parties think they have made a contract; they must have expressed their intentions in a manner that is capable of understanding." 1 Corbin on Contracts, § 95 at 394.

Further, a contract requires a manifestation of mutual assent in the form of an offer by one party which is accepted by the other party. *Armbrust Int'l, Ltd. v. Travelers Casualty and Surety Co. of America*, 2006 U.S. Dist. LEXIS 25640, (D.R.I. 2006). A manifestation of mutual assent to an exchange requires that each party either make a promise or begin to render performance. *See* Restatement of Contracts Second, §18. Importantly, undisclosed intentions are immaterial in the absence of fraud or mistake and "neither party to a contract may assume that a contract exists if he or she knows that the other party does not intend what his or her words or actions may seem to express." *17 C.J.S. Contracts § 37.*

Indeed, even a contract implied in fact must contain all of the elements of an express contract. *J.Koury Steel Erectors, Inc. of Massachusetts v. San-Vel Concrete Corp.*, 387 A.2d 694,697 (R.I. 1978), quoting *Bailey v. West*, 249 A.2d 414 (R.I. 1969). Therefore, a contract

[1] All relevant case law is attached as an Appendix to this Memorandum.

implied in fact, "is dependent on mutual agreement or consent, and on the intention of the parties; and meeting of the minds is required." *Id.* Further a contract implied in fact cannot exist "unless a contract status is shown." *Id.* Finally, a contract cannot be implied in fact "where the facts are inconsistent with its existence". *Id.*

**2. There was no contract formed between Carter and NACEPF.**

To establish either an express or implied contract there must be a "mutual assent", "meeting of the minds" and intent to promise. There was no "mutual assent" or "meeting of the minds" between NACEPF and Carter as to the terms of any contract. Primeau repeatedly requested that Pierce provide him with a contract in 1999. **(**See ¶¶ 11-12.**)** Pierce refused to provide Primeau and NACEPF with a contract and the issue was never raised again by Primeau. (See ¶¶ 11-12.)

NACPEF has presented no evidence that at any time its offer was accepted by Carter, thus resulting in the formation of a contract. Pierce and Carberry both testified that they viewed Primeau's decision to prepay simply as a preferred method of payment and bookkeeping. **(**See ¶ 39.**)** Further, NACEPF has produced no competent, admissible evidence on what the terms of this alleged contract are. The Court can not enforce a contract when there is no evidence as to the contract's basic terms. Primeau tellingly described his actions with regard to Carter as a "strategy". By paying Carter in advance for broadcasting time, Primeau hoped to subvert Pierce's unwillingness to grant him a contract and to establish a "contract" unbeknownst to Carter. Primeau simply decided on his own to prepay to broadcast on WRIB with the secret and erroneous belief that his actions would somehow form a contract between the parties.

**C. As a matter of law, there is no competent admissible evidence that Faith tortiously interfered with a contract.**

**1. The Applicable Standard.**

The elements of the tort of interference with a contractual relationship are well-established under Rhode Island law. To prevail under this theory, a plaintiff must prove: (1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional interference with the contract, and (4) that plaintiff suffered damages as a result of the defendant's interference. *Banco Totta e Acores v. Fleet Nat'l Bank*, 768 F. Supp. 943, 950 (D.R.I. 1991). Therefore, in order to show an interference with a contractual relationship, the plaintiff must prove the existence of a contract. *Moran v. Worrell Health Care, Inc.* 1993 R.I. Super. Lexis 56.

**2. There is no competent evidence of a contract between Carter and NACEPF which Faith could have tortiously interfered.**

As outlined in detail above, NACEPF has presented no evidence that a contract existed between it and Carter. An element to the tort of interference with a contract is the existence of a contract. As no contract was in place between NACEPF and Carter it is impossible as a matter of law, for Faith to have tortiously interfered with it.

**D. Assuming, without admitting, that a contract existed between Carter and NACEPF, as a matter of law an FCC licensee has total discretion to terminate programming as it sees fit.**

The Federal Communication Commission ("FCC") has often stated that the ultimate responsibility for programming decisions must remain in the hands of licensees. *Marsh Media, El Paso*, 41 RR 2d 1655, 67 FCC 2d 284 (1977). In the matter of *Marsh Media, El Paso*, before the FCC, Marsh Media sought renewal of its FCC license and a petition to deny the renewal was filed by the Committee for the Development of Mass Communication ("the Committee"). *Id.*

The Committee had reached an agreement with Walton Enterprises, Inc., then licensee of KELP-TV, which specifically stated that the station would air a Committee produced program. *Id.* The station was sold to Marsh Media who cancelled the Committee's program. *Id.* The Committee claimed that one of Marsh Media's representatives had orally indicated that the agreement would be honored after the sale. *Id.*

The FCC stated that, "agreements between licensees and the public remain in a sense 'personal' to a particular licensee and cannot be held over the heads of future assignees of a station's license." *Marsh Media, El Paso*, 41 RR 2d 1655, 67 FCC 2d 284 (1977). This position also furthers the FCC's policy that agreements, "should not strictly bind a licensee to fixed and unchangeable positions." *Id,* quoting *Agreements Between Licensees and the Public,* 57 FCC 2d 42, 49-50 (1975). Most importantly, the FCC held that oral agreements have no force or effect before it as there are often differences of recollection regarding oral agreements. *Id,* quoting *Agreements Between Licensees and the Public,* 57 FCC 2d 42, 51 (1975).

Further, the United States Supreme Court in *National Broadcasting Co., Inc., v. United States* noted with approval the following statement from the FCC's 1941 Report on Chain Broadcasting, "The licensee has the duty of determining what programs shall be broadcast over his station's facilities...The licensee is obliged to reserve to himself the final decision as to what programs will best serve the public interest." *National Broadcasting Co., Inc., v. United States,* 319 U.S. 190 (1943). The Court concluded that a licensee is not fulfilling his obligations to operate to the public interest, and is not operating in accordance with the express requirements of the Communications Act, if he agrees to accept programs on any basis other than his own reasonable decision that the programs are satisfactory. *Id.*

Therefore, at either Carter or Faith's discretion, any agreements they had with any broadcasters could have terminated if it was determined that the programs would not best serve the public interest. As a matter of law, liability can not attach to either Carter or Faith for the cancellation of NACEPF's programming. Additionally, Faith, as a licensee, has ultimate responsibility for programming broadcast over its facility. Had Faith given the former WRIB broadcasters notice that they were going off the air, it would have been liable for any statements made by angry broadcasters in violation of FCC rules and regulations. This problem was compounded by the fact that many of the broadcasters on WRIB spoke foreign languages, which would have required Faith to employ interpreters to constantly monitor these programs.

## III. CONCLUSION

For the foregoing reasons, the defendants, Carter and Faith, request that this Court grant their motion for summary judgment on all of the plaintiff's claims.

Respectfully submitted,

CARTER BROADCASTING
CORPORATION and FAITH
CHRISTIAN CENTER

By their Attorneys,

DAVID E. MAGLIO & ASSOCIATES, P.C.

/s/ David E. Maglio, Esq.
David E. Maglio, #3459
101 Dyer Street, Second Floor
Providence, Rhode Island 02903
Tel: (401) 831-5400
Fax: (401) 831-7979
dmaglio@magliolaw.com

**CERTIFICATION**

I hereby certify that an exact copy of the within document was filed by CM/ECF to the following individuals on the 12th day of December, 2007.

- Mark A. Pogue
  Edwards Angell Palmer & Dodge, LLP
  2800 Financial Plaza
  Providence, RI 02903
  mpogue@eapdlaw.com

/s/ David E. Maglio, Esq. (R.I. Reg. No. 3459)

H:\clients\Carter Broadcasting\NACEPF\pleadings\motion for sj w memlaw.doc