UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.<br><br>*Plaintiff*<br><br>VS.<br><br>CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER<br><br>*Defendants.* | : | C.A. 06-431ML |

**AFFIDAVIT OF JOHN PRIMEAU**

I, John Primeau, hereby depose and state as follows:

1. I am the president of the North American Catholic Educational Programming Foundation, Inc. ("NACEPF"). I am giving this affidavit in support of NACEPF's objection to the defendants' motion for summary judgment in this case. I have personal knowledge of the facts set forth below.

2. NACEPF is an independent lay organization engaged in telecommunications, including producing and broadcasting religious and educational programming for television and radio. Our place of business is in Johnston, Rhode Island.

3. I have reviewed a document captioned "Defendants Carter Broadcasting Corporation And Faith Christian Center's Local Rule CV 56 Statement Of Undisputed Facts In Support Of Their Motion For Summary Judgment (the "Statement"). I dispute a number of the "facts" set forth in this document, because they are erroneous and/or incomplete.

4. While I do not remember verbatim the conversation in 1999 that is referred to in paragraphs 11 and 12 of the Statement, I know that the conversation related to my request that WRIB provide NACEPF with a written broadcast contract. I recall that after Mr. Pierce said he could not provide a written contract, I gave him a check drawn on NACEPF's account and told him that this was NACEPF's check to purchase a year's worth of broadcast time on WRIB, at the rates then in effect. I told him that Carter could confirm this purchase by accepting our check, and that NACEPF would thereby gain the security of a full year of airtime. Mr. Pierce acknowledged to me that NACEPF was offering the check to purchase a full year of airtime. He took the check and later cashed it.

5. According to paragraph 11 of the Statement, in 1999, I "requested that [John] Pierce provide [NACEPF] with a one year contract to prevent the possibility of NACEPF's programs being taken off the air by the new owner." This statement is inaccurate and misleading because what I outlined in 4 above constitutes my dealings with Mr. Pierce.

6. According to paragraph 12 of the Statement, in 1999 "Pierce refused to provide Primeau with a contract." This statement is inaccurate and misleading because what I outlined in 4 above constitutes my dealings with Mr. Pierce.

7. According to paragraph 12 of the Statement, in 1999 "Primeau returned to WRIB over the next several days requesting a contract from Pierce and each time Pierce refused." I deny that I returned to WRIB over the next several days or repeated my request for a written contract because what I outlined in 4 above constitutes my dealings with Mr. Pierce.

8. According to paragraph 18 of the Statement, Mr. Pierce "prepare[d] monthly in-house bills regarding NACEPF's account with WRIB, which would reflect a credit balance, if any." If

the implication here is that WRIB sent NACEPF such monthly bills, I deny it. WRIB never sent NACEPF a monthly bill.

9. According to paragraph 20 of the Statement, "Pierce would send NACEPF a yearly invoice once NACEPF's credit balance had been depleted and it began owing WRIB for broadcasting time." As NACEPF never received an annual "yearly invoice" from WRIB, I deny this.

10. During the years 2000-2006, NACEPF continued to purchase blocks of airtime on WRIB in advance. We usually purchased a year of airtime at a time. To my best recollection, I would personally deliver the checks to pay for this airtime to Mr. Pierce. And on such occasions, I would indicate that NACEPF was purchasing a year of airtime, and would indicate (sometimes just on a Post-It note) how I calculated the annual fee. Mr. Pierce would acknowledge that NACEPF was purchasing airtime in advance, and would cash NACEPF's check for the purchase.

11. According to paragraph 22 of the Statement, "On March 16, 2006, NACEPF 'forwarded' a check to WRIB in the amount of $14,560.00… for the entire year." I am not sure what the term "forwarded" means here, but in 2006 to the best of my recollection and established practice I personally delivered NACEPF's $14,560 check to Mr. Pierce at WRIB, for the period May 1, 2006 through April 30, 2007. This was by now almost a yearly ritual. Mr. Pierce clearly understood that this was NACEPF's check to purchase a year of broadcast time, and that he

could confirm the purchase by depositing the check. Mr. Pierce acknowledged that NACEPF's disbursement covered the entire year of airtime payment and cashed the check.

John Primeau

Sworn to before me under the penalties of perjury this 28th day of January, 2008.

Notary Public
My Commission Expires: 4-7-08