UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. | : | |
| *Plaintiff* | : | |
| VS. | : | C.A. 06-431ML |
| CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER | : | |
| *Defendants*. | : | |

**PLAINTIFF NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.'S LOCAL RULE CV 56 STATEMENT**

Pursuant to Local Rule CV 56, plaintiff National American Catholic Educational Programming Foundation, Inc. hereby files its statement of Disputed And Undisputed Facts.

1. NACEPF is an independent lay organization engaged in telecommunications, including producing and broadcasting religious and educational programming for television and radio. Affidavit of John Primeau ("Primeau Aff."), ¶ 2. NACEPF's place of business is in Johnston, Rhode Island. Id. The president of NACEPF is John Primeau ("Primeau"). Id., ¶ 1.

2. Defendant Carter Broadcasting Corporation ("Carter") owned and operated an AM radio station located in East Providence, Rhode Island known as WRIB. Defendants' Local Rule CV 56 Statement ("Def. St."), ¶ 3. While Carter owned WRIB, John Pierce ("Pierce") was its station manager. Id., ¶ 6.

3. NACEPF paid to have its programming broadcast on WRIB beginning in 1994. Def. St., ¶ 7. In 1999, and perhaps earlier, NACEPF began paying in advance to purchase future blocks of airtime on WRIB. Deposition of John Pierce (Exh. A hereto), p. 30.

4. In 1999, Primeau asked Pierce to give him a written contract for a full year of airtime. Primeau Aff., ¶ 4. When Pierce said that he could not do this, Primeau gave him a check drawn on NACEPF's account and told Pierce that this was NACEPF's check to purchase a year's worth of broadcast time on WRIB, at the rates then in effect. Id. Primeau told Pierce that Carter could confirm this purchase by accepting NACEPF's check, and that NACEPF would thereby gain the security of a full year of airtime. Id. Pierce acknowledged that NACEPF was offering the check to purchase a full year of airtime, and took the check. Id.

5. After Primeau left, Pierce called Kenneth Carberry ("Carberry"), the president of Carter. Exh. A, pp. 36-37. Pierce explained the situation to Carberry, and said that NACEPF had left him a check for a year of airtime and wanted a broadcast contract. Id. Carberry was trying to sell WRIB at the time, but was having a lot of trouble with his buyer. Id. Carberry instructed Pierce to cash NACEPF's check. Id. Pierce deposited the check in the general checking account Carter maintained for WRIB, where it was co-mingled with other funds belonging to Carter. Id.

6. During the years 2000-06, NACEPF continued to purchase blocks of airtime on WRIB in advance. Primeau Aff., ¶ 10. It usually purchased a year at a time. Id. Primeau would personally deliver the check to pay for this airtime. Id. On each such occasion, Primeau would indicate to Pierce that NACEPF was purchasing a year of airtime, and would show (sometimes just on a Post-It note) how Primeau had calculated the annual fee. Id. Pierce would

acknowledge that NACEPF was purchasing airtime in advance, and would cash NACEPF's check for the purchase. Id.

7. WRIB never sent a monthly bill to NACEPF Primeau Aff., ¶ 8. It never sent a yearly invoice to NACEPF, either. Id., ¶ 9.

8. In the Spring of 2006, Primeau personally delivered a NACEPF check in the amount of $14,560 to Pierce at WRIB, for the period May 1, 2006 through April 30, 2007. Primeau Aff., ¶ 11. This was by now a yearly ritual. Id. When Primeau gave this check to Pierce, Pierce clearly understood that this was NACEPF's check to purchase a year of broadcast time, and that he could confirm the purchase by depositing the check. Id. Pierce acknowledged that NACEPF's check covered the entire year purchase, and cashed the check. Id.

9. In the summer of 2005, Carter began negotiating the sale of WRIB to Faith. Def. St., ¶ 21. Carberry, concerned that the broadcasters on WRIB would become upset at the prospect of being taken off the air by the new owner, told Pierce to keep the impending sale "under his hat." Exh. A, p. 62. Pierce deliberately kept NACEPF in the dark about the sale as long as he possibly could. Id., p. 52. Pierce did not tell NACEPF about the sale until a week or less before it closed. Id., pp. 59-60.

10. When NACEPF learned of the impending sale, on July 6, 2006 it sent a letter by fax and Federal Express to Carter (with a copy emailed to Faith) asserting that it had time remaining on its one-year broadcasting contract on WRIB. Exh. B. On July 7, 2006, Carter nonetheless sold WRIB to Faith. Deposition of Kenneth Carberry (Exh. C hereto), p. 65. Faith proceeded to dismiss all of the WRIB broadcasters, including NACEPF. Def. St., ¶ 31.

11. During the depositions they gave in this case, both Carberry and Pierce admitted that Carter and NACEPF had a one-year broadcasting contract for the period May 2006 – April 2007. Exh. A, p. 42; Exh. C, pp. 25-26, 73.

NORTH AMERICAN CATHOLIC
EDUCATIONAL PROGRAMMING
FOUNDATION, INC.

By Its Attorneys,

/s/ Mark A. Pogue

Mark A. Pogue #3441
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of January, 2008, a copy of the foregoing Plaintiff North American Catholic Educational Programming Foundation, Inc.'s Local Rule CV 56 Statement by ECF to the following counsel of record:

David E. Maglio, Esq.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903

/s/ Mark A. Pogue