UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC.,
Plaintiff,
VS. C.A. NO. 06-431ML
CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER,
Defendants.

DEPOSITION OF KENNETH CARBERRY, in the above-entitled cause, taken on behalf of the Plaintiff, before Jeannette A. Freelove, Notary Public, in and for the State of Rhode Island, at the offices of Edwards Angell Palmer & Dodge, LLP, 2800 Financial Plaza, Providence, Rhode Island, on August 29, 2007, at 9:30 a.m.

APPEARANCES:
For the Plaintiff:
EDWARDS ANGELL PALMER & DODGE, LLP
BY: MARK A. POGUE, ESQUIRE
For the Defendants:
LAW OFFICE OF DAVID MAGLIO & ASSOCIATES, PC
BY: DAVID E. MAGLIO, ESQUIRE

Also Present: John Primeau

ALLIED COURT REPORTERS, INC.
115 PHENIX AVENUE
CRANSTON, R.I. 02920
(401) 946-5500

send NACEPF at the end of every year kind of a summary of the amount of the full year's airtime that had been consumed?
THE WITNESS: Could you restate that? I'm sorry.
Q. My understanding is that Pierce would send to NACEPF at the end of every calendar year sort of a statement of account reflecting how much of the annual airtime purchased had been used or consumed during the calendar year thus far. Do you have any knowledge of that statement?
A. I do not, no, no.
Q. Was it your understanding -- strike that. As you understood it, after -- strike that. Start over. Each of the checks that NACEPF provided to WRIB for a year's worth of airtime was cashed by either Carter or RIB; correct?
A. Correct.
Q. You had no difficulty negotiating the check and depositing it into the Fleet account; right?
A. No.
Q. And once Carter or WRIB accepted Primeau's payment or NACEPF's payment for the year's worth of airtime, is it your understanding that NACEPF had purchased a year's worth of programming rights?



MR. MAGLIO: I object to the form of the question. Go ahead. You can answer.
THE WITNESS: Could you restate it, again?
MR. POGUE: Well, could you reread the question, please? If you don't understand it, I'll rephrase it.
THE WITNESS: I don't understand it, no.
Q. Okay. We said that NACEPF would send a check every year for a year's worth of airtime on WRIB; right?
A. Correct.
Q. And RIB would then deposit those checks; correct?
A. Correct.
Q. And was it your understanding that after RIB had accepted those checks for a year's worth of airtime, WRIB was required to provide a year's worth of airtime for NACEPF programming?
A. No.
MR. MAGLIO: I object to the form of the question.
A. I'll answer it no. I see no requirement whatsoever, no.
Q. Well, what did you think NACEPF was getting in



return for its purchase of a year's worth of airtime?
A. Airtime that the radio station would air the programs, but not required to do so.
Q. And why do you say they weren't required --
A. Because --
(OFF THE RECORD)
Q. Why do you say that RIB was not obligated to provide the shows for which NACEPF had paid?
A. Because, at any time, the radio station could discontinue the programs and return the remainder of whatever the monies were. So let's just take the word "required" out, because we were not required to run any program for anyone, regardless of the method of payment.
Q. Why do you say that?
A. Well, there was no contract to do so.
Q. Well, what did you think NACEPF was getting in return for buying a year's worth of airtime and giving you a check for that amount?
A. I, personally -- we, generally, John and I, always wondered why NACEPF would, indeed, pay in that method. We concluded, then and still, that it was merely their method of paying for whatever reason. It was not our business. So if they



chose to pay in that form, we merely accepted it, and I will elaborate here here, if you don't mind.
MR. MAGLIO: That's up to Mr. Pogue.
Q. Please elaborate.
A. Sure.
MR. POGUE: Now you have to.
A. That's why I took exception to the "required" word. A radio station is never required to air any program or commercial paid for or not in advance or late. It's up to the radio station to determine that they should and would do so.
Q. What's the basis of that statement?
A. The basis is that it's also the radio station's prerogative to run a program or not.
Q. Do you have any document that says that?
A. The Federal Communications Commission document tells us that we are in 100 and total control of the radio station. That is our license. So if we, meaning any station, says, "Well, we don't want to run this Primeau program tomorrow because we just don't want to run it. It's paid for. We'll give him back his money." We had the right to do so. Not "we" personally, but a general licensee or license holder.
Q. You said that you, quote, always wondered -- you