UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. *Plaintiff* | : | |
| VS. | : | C.A. 06-431ML |
| CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER *Defendants*. | : | |

RECEIVED JAN 2? 2007

**PLAINTIFF'S RESPONSES TO FIRST**
**SET OF INTERROGATORIES PROPOUNDED BY THE DEFENDANTS**

Pursuant to F. R. Civ. P. 33, plaintiff North American Catholic Educational Programming Foundation, Inc. ("NACEPF") hereby responds to defendants' first interrogatories.

**Objections Applicable To All Interrogatories**

NACEPF objects to providing information protected from disclosure by the attorney-client and/or work product privilege.

**Responses To Individual Interrogatories**

**INTERROGATORY NO. 1:** Please state your full name, business and residential addresses, and position(s) held with NACEP.

**ANSWER:** John Primeau, President of NACEPF, business address 2419 Hartford Avenue, Johnston, RI 02919-1719.

**INTERROGATORY NO. 2:** If you allege, as set forth in paragraph 8 of the plaintiff's Complaint, that "Carter entered into a series of one-year contracts to broadcast the plaintiff's programming", please state all of the facts and the identity of any persons and documents that support your allegations.

**ANSWER:** For many years prior to 2006, NACEPF would send Carter a check for the right to broadcast its programming for a one-year period on WRIB AM 1220 (the "Station") , a radio station owned by Carter. Copies of many of these checks were provided with NACEPF's responses to the defendants' document requests. Carter indicated its acceptance of these one-year broadcasting contracts by negotiating NACEPF's check and permitting NACEPF to broadcast its programming on the Station.

**INTERROGATORY NO. 3:** If you allege, as set forth in paragraph 9 of the plaintiff's Complaint, that "the rate for each program charged by Carter was below market value due to the large amount of goodwill that plaintiff had developed for Carter's broadcasting station", please state all of the facts and the identity of any persons and documents that support your allegations.

**ANSWER:** The basis of this allegation is John Primeau's experience with and knowledge of the rates charged by Carter for programming on the Station compared to the rates charged by other radio stations for programming on those stations. Examples of rates charged by other advertising outlets are contained in the documents produced by NACEPF in this case.

**INTERROGATORY NO. 4:** If you allege, as set forth in paragraph 10 of the plaintiff's Complaint, that "Carter's acceptance of plaintiff's payment for airtime formed a contract between the parties", please state all of the facts and the identity of any persons and documents that support your allegations.

**ANSWER:** See response to question 2.

**INTERROGATORY NO. 5:** If you allege, as set forth in paragraph 11 of the plaintiff s Complaint, that "Faith became aware of the fact that Carter had contracted with the plaintiff", please state all of the facts and the identity of any persons and documents that support your allegations.

**ANSWER:** This allegation was made upon information and belief. NACEPF understands and believes that Faith became aware of Carter's obligations to persons or entities with programming or hosting rights on the Station during Faith's due diligence leading up to its acquisition of the Station.

**INTERROGATORY NO. 6:** If you allege, as set forth in paragraph 12 of the plaintiff's Complaint, that "Carter held the plaintiff's check without cashing it in order to ensure that Carter would benefit no matter how its negotiations played out", please state all of the facts and the identity of any persons and documents that support your allegations.

**ANSWER:** Carter in fact held NACEPF's check for a period of three months, until June 26, 2006, before cashing it. NACEPF understands and believes that Carter held the check for the reasons set out in paragraph 12 of the Complaint.

**INTERROGATORY NO. 7:** For each and every oral communication between NACEPF and Carter relating to the facts and allegations contained in the complaint, please provide the following information:

a. the identity of the persons participating in the communication(s);

b. the identity of the persons present during the communication(s);

c. the date(s) of the communication(s); and

d. the subject of the communications.

**ANSWER:** None.

**INTERROGATORY NO. 8:** For each and every oral communication between NACEPF and Faith relating to the facts and allegations contained in the complaint, please provide the following information:

e. the identity of the persons participating in the communication(s);

f. the identity of the persons present during the communication(s);

g. the date(s) of the communication(s); and

h. the subject of the communications.

**ANSWER:** None.

**INTERROGATORY NO. 9:** If you allege, as set forth in paragraph 16 of the plaintiff's Complaint, that "NACEPF will have to pay considerably more than twenty-eight dollars per half hour to find a comparable radio broadcast outlet", please state all of the facts and the identity of any persons and documents that support your allegations.

**ANSWER:** See response to question 3 above.

**INTERROGATORY NO. 10:** If you allege, as set forth in Count One of the plaintiff's Complaint, that "Carter breached a contract with NACEPF", please provide (a) a detailed recitation of the terms of the contract including the date that the contract was formed, (b) the identity of the person(s) who negotiated the terms of the contract for NACEPF and Carter, (c) the term of the contract, (d) the consideration provided by each party, (e) the promises or performance to which each party contractually bound itself, (f) the manner in which Carter breached the contract, and (g) a detailed itemization of the damages, if any, suffered by NACEPF as a result of Carter's alleged breach of the contract.

**ANSWER:** The contract was formed on June 26, 2006, when Carter cashed NACEPF's check. The contract called for Carter to permit NACEPF to broadcast 520 half-hour programs, two of which would be broadcast each day, five days each week, between May 1, 2006 and April 30, 2007. Carter breached the contract by failing to permit NACEPF to broadcast its programming, beginning in July 2006, after only 120 half-hour segments had aired. The damages sustained by NACEPF include the money it prepaid for the right to broadcast through April 30, 2007; the increased costs it will incur to replace the 400 half-hour broadcasts that did not air when Carter broke the contract; the loss of its listening audience; and the loss of listener goodwill it had developed while broadcasting on the Station.

**INTERROGATORY NO. 11:** If you allege, as set forth in Count Two, of the plaintiff's Complaint, that "Faith tortiously interfered with the contract between Carter and NACEPF", please state all of the facts and the identity of any persons and documents that support your allegations.

**ANSWER:** By letter dated July 6, 2006, John Primeau of NACEPF notified Faith of the existence of the NACEPF-Carter contract. (Faith was probably already aware of this contract.) Faith nonetheless interfered with the performance of that contract by acquiring the Station from Carter, then preventing NACEPF and Carter from performing their agreement to broadcast NACEPF's programming on the Station.

**INTERROGATORY NO. 12:** In the July 6, 2006 letter from John Primeau, President of NACEPF to Kenneth Carberry, President of Carter Broadcasting, John Primeau states that, "should our pre-paid asset suffer detriment via the station signal going dark or any other failure

to perform the obligations proper to our prepaid asset, then the value easily exceeds the $75,000 threshold value of consideration required to prosecute a rapid decision in the federal courts." With regard to this statement, please state all of the facts and the identity of any persons and documents that support your allegations including in your answer a detailed itemization of your damages.

**ANSWER:** NACEPF's damages are set forth in response to question 10 above.

**INTERROGATORY NO. 13:** Please give the name and present address of each person you expect to call as an expert witness at trial; and with respect to each expert witness, please state:

a) The subject matter on which each expert is expected to testify;

b) The substance of the facts and opinions to which each expert is expected to testify; and,

c) A summary of the grounds for each opinion.

**ANSWER:** Expert witnesses have not yet been selected.

**INTERROGATORY NO. 14:** Please provide the name and, if known, the address and telephone number of each individual likely to have discoverable information that the plaintiffs may use to support its claims.

**ANSWER:** John Primeau (business address given above); Kenneth Carberry, Carter Broadcasting, Inc., 20 Park Plaza, Suite 720, Boston, MA 02116 (617) 423-0210; Rev. David M. Marquard, Pastor, Faith Christian Center, Seekonk, MA.

**INTERROGATORY NO. 15:** Please provide a copy of, or a description by category and location of, all documents that are in the possession, custody, or control of the plaintiff that the plaintiff may use to support its claims at trial.

**ANSWER:** NACEPF has not yet selected its trial exhibits.

**INTERROGATORY NO. 16:** Please provide a computation of each and every category of damages claimed by the plaintiff, making available for inspection and copying the documents or other evidentiary material, on which such computation is based.

**ANSWER:** The categories of documents NACEPF claims are set forth in question 10 above. NACEPF has not yet quantified the dollar value of its damage claims. In part, doing so will depend on the receipt of information NACEPF has requested from the defendants.

**INTERROGATORY NO. 17:** Please identify all individuals who assisted in the preparation of the answers to these interrogatories.

**ANSWER:** John Primeau, with assistance from his attorney, prepared these answers.

**INTERROGATORY NO. 18:** Please identify all documents that you reviewed and/or relied upon to assist you in preparing the answers to these interrogatories.

**ANSWER:** See the documents which NACEPF has produced in this case number N001-148.

I, John Primeau, as President of North American Catholic Educational Programming Foundation, Inc. hereby state that I have read the foregoing responses to Interrogatories propounded to North American Catholic Educational Programming Foundation, Inc.; that I verify the foregoing responses to said Interrogatories for and on behalf of North American Catholic Educational Programming Foundation, Inc., and that I am duly authorized to do so and that said responses are true and correct to the best of my knowledge.

John Primeau, President
North American Catholic Educational Programming Foundation, Inc.

STATE OF RHODE ISLAND )
)ss.:
COUNTY OF PROVIDENCE )

BEFORE ME, the undersigned authority, personally appeared John Primeau, who, being first duly sworn, deposes and says that he has read the foregoing answers to interrogatories and the same are true and correct to the best of his information and belief.

Notary Public
My Commission Expires: 4-7-08

As to objections:

Mark A. Pogue #3441
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of January, 2007, a copy of the foregoing Plaintiff's Responses To First Set of Interrogatories Propounded By The Defendants was served by first class mail, postage prepaid to the following counsel of record:

David E. Maglio, Esq.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903