UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. | : | |
| *Plaintiff* | : | |
| VS. | : | C.A. 06-431ML |
| CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER | : | |
| *Defendants.* | : | |

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

In addition to the standard jury instructions given in a civil jury trial, plaintiff North American Catholic Educational Programming Foundation, Inc. ("NACEPF") proposes that the following instructions be given.

**Proposed Instruction No. 1: Opinion Evidence and Expert Witnesses.**

During this trial you have heard testimony from a witness named Steven Apel, who testified as an expert witness for the plaintiff. Expert witnesses are persons who, because of their education or experience, are permitted to state opinions and the reasons for those opinions. Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons he gives for his opinions, and all the other evidence in the case.

United States v. Jackson, 425 F.2d 574, 577 (D.C.Cir. 1970); Pollard v. Metropolitan Life Ins. Co., 598 F.2d 1284, 1288 (3d Cir. 1979), cert. denied, 444 U.S. 917 (1979).

**Proposed Instruction No. 2: Summary of the Case.**

I will now give you a brief summary of this case before instructing you further on the law that you are to apply during your deliberations.

As you know, the plaintiff in this case is the North American Catholic Educational Programming Foundation, which I will refer to as NACEPF. There are two defendants: Carter Broadcasting Corporation, and Faith Christian Center, Inc.

NACEPF contends that it made a series of one-year agreements, or contracts, with Carter Broadcasting for the right to broadcast NACEPF's programming on a radio station owned by Carter. That radio station, located in East Providence, Rhode Island, was called WRIB. According to NACEPF, during the Spring each year it would deliver to Carter Broadcasting a check to pay in advance for an entire year's worth of broadcasting on WRIB, at an agreed upon price per show. Over the course of the following year, Carter would then broadcast the number of shows that NACEPF had paid for.

Carter Broadcasting does not dispute that it received payment from NACEPF each year and that it broadcast NACEPF's radio shows in return for that payment. But Carter denies that it had a contract with NACPEF, or that it was obligated to broadcast the shows that NACEPF paid for.

The events giving rise to this trial occurred in 2006. The parties agree that, in the Spring of that year, NACEPF gave Carter Broadcasting a check in the amount of $14,560 to broadcast 420 of NACEPF's half hour shows, beginning in May 2006. The parties also agree that, in early July 2006, Carter Broadcasting sold radio station WRIB to the other defendant in this case, Faith Christian Center, Inc.

NACEPF contends that, when it learned that Carter was about to sell WRIB to Faith, it wrote a letter to both Carter and Faith complaining that it still had unused

broadcast time on WRIB that it had paid Carter for, and that it expected Carter and Faith to honor those rights. Faith disputes this claim. According to Faith, it was not aware of any contract between NACEPF and Carter at the time it purchased WRIB from Carter.

In any event, after Faith became the owner of WRIB, it closed the station and did not allow NACEPF or any other entity to continue broadcasting on WRIB. The parties agree that, as of the time that Faith dismissed these broadcasters from WRIB, Carter had broadcast 100 of the 420 shows that NACEPF had paid Carter to broadcast.

That is the general background of this case. I will now discuss with you the separate legal claims that NACEPF has asserted against Carter and against Faith.

**Proposed Instruction No. 3: NACEPF's Claim Against Carter Broadcasting.**

The plaintiff in this case, NACEPF, has asserted a separate legal claim against each of the defendants. I will first discuss the legal claim that NACEPF has asserted against Carter Broadcasting, and then will turn to the claim NACEPF has asserted against Faith Christian Center, Inc.

The legal claim that NACEPF has asserted against Carter Broadcasting is called breach of contract. According to NACEPF, it had a contract with Carter Broadcasting to broadcast its programming on Carter's radio station, WRIB, for a one year period from May 2006 through April 2007. NACEPF contends that Carter breached or broke that contract by selling WRIB to Faith before NACEPF had broadcast all of the programs it had paid for.

Carter, on the other hand, denies that it had a broadcasting contract with NACEPF. Carter contends that it was free to sell WRIB to Faith without regard to any contract it had with NACEPF.

In evaluating the claim of breach of contract that NACEPF has asserted against Carter Broadcasting, it is your responsibility as jurors to determine whether NACEPF and Carter had a contract or not. To help you make that determination, I will now review with you some of the important legal principles governing the law of contracts.

**Proposed Instruction No. 4: Offer and Acceptance.**

To create a binding contract, there must be an offer and an acceptance. But it is not necessary that either the offer or the acceptance be made in writing, and it is not necessary that each side sign a piece of paper, in order to create a valid contract. Contracts can be created by writings signed by each party, but that is not the only way a contract can be created. Contracts can also be created by the words of the parties, or by their actions.

Marshall Contractors, Inc. v. Brown University, 692 A.2d 669 (R.I. 1997); Anthony A. Nunes Inc. v. American Automobile Assoc., 1995 WL 941459 (R.I. Super. 1995).

**Proposed Instruction No. 5: Offer.**

As I indicated, to create a contract there must be an offer and an acceptance. The offer and the acceptance can be made in writing, or they can be made orally, or they can be made through the actions of the parties.

First of all, what is an offer? An offer is any communication which gives the recipient the ability to make a contract by accepting the offer. In order for a communication to constitute an offer, the communication should specify the proposed terms of the contract, such as the price of what is being purchased, the amount of the goods or services being purchased, and the length of the proposed contract.

Armbrust International, Ltd. V. Travelers Casualty And Surety Company Of America, 2006 WL 1207659 * 3 (D.R.I. 2006); Crellin Technologies v. Equipment Lease Corp., 18 F.3d 1 (1st Cir. 1994); Bina v. Providence College, 844 F.Supp. 77, (D.R.I. 1994), aff'd., 39 F.3d 21 (1st Cir.), cert. den., 115 S.Ct. 1406 (1995).

**Proposed Instruction No. 6: Acceptance of Offer.**

If an offer has been made to someone and the offer is accepted, then a contract is made. There are several different ways in which a person can accept an offer that has been made to him.

Acceptance of an offer can be made in writing, or it can be made verbally. Acceptance can also be made through the actions or performance of a party. In fact, some offers invite the other party to accept the offer by performing. For example, if I say to a person "I will pay you $10 if you cut my grass on Saturday," and that person says nothing but proceeds to cut my grass on Saturday, then he has accepted my offer by his performance. In this situation a contract was created even though the party who received the offer never said anything. And because a contract was created, I owe the person $10.

Marshall Contractors, Inc. v. Brown University, 692 A.2d 665, 669 (R.I. 1997) (citations omitted); Anthony A. Nunes, Inc. v. American Automobile Assoc., 1995 WL 941459 at *3 (R.I. Super. 1995); In re Newport Plaza Assocs., L.P. v. Durfee Attleboro Bank, 985 F.2d 640, 645 (1st Cir. 1993); Judd Realty, Inc. v. Tedesco, 400 A.2d 952, 956 (R.I. 1979); Restatement (Second) of Contracts, § 54(1).

**Proposed Instruction No. 7: History of Dealings May Create Contract.**

As I have indicated, a party's actions or performance can serve as its acceptance of a contract offer. In deciding whether the actions of NACEPF and Carter Broadcasting in this case created a contract, you may also consider the history of the dealings or conduct between these two parties. The history of two parties' dealings with each other may create a contract, because it may show that one party, through its consistent actions, accepted the offer made by the other party.

School Committee Of The City Of Providence v. Board Of Regents For Education, 308 A.2d 788, 790 (R.I. 1973); Buzzmarketing, LLC v. The Upper Deck Company, LLC, 2004 WL 966241 at * 4 (E.D. Pa. 2004); Dr. Franklin Perkins School v. Freeman, 741 F.2d 1503, 1515 (7th Cir. 1984); CME Tours, Inc. v. Hahnemann University, 1986 WL 10121 at *2 (E.D.Pa. 1986); Carter v. Katz, et al., 120 Misc.2d 1009, 1011 (Supr. Ct. NY 1983).

**Proposed Instruction No. 8: Acceptance Through Control Over Offeror's Property.**

Another way in which a party's performance can signal that it has accepted an offer is if the party receiving the offer exercises control over money or property tendered by the offering party as part of its offer. For example, if I hand someone $10 and say to him "I am giving you this money and you may keep it in return for cutting my grass on Saturday" and the person keeps the $10 payment, then he has accepted my offer for a contract, and he is bound to cut my grass on Saturday.

Restatement (Second) of Contracts, § 69(2); Corbin on Contracts, §3.17, at 401 (2007); accord Autographic Register Co. v. Philip Hanover Co., 198 F.2d 208, 212 (1st Cir. 1952).

**Proposed Instruction No. 9: Evidence Viewed From External Standpoint.**

I have indicated to you some of the ways in which a party can show that it accepted a contract offer from another party. As jurors, it is your duty to decide in this case whether Carter Broadcasting and NACEPF made a one-year contract for broadcasting services. In reviewing the evidence that bears on this issue, I instruct you that you should examine the evidence from an objective or external point of view. In other words, in considering whether NACEPF and Carter Broadcasting made a contract, you should not consider any subjective or private feelings either party may have had about this subject. Instead, you should review the evidence based on the way it appeared to an outsider who was not privy to the private thoughts of either NACEPF or Carter Broadcasting.

Bourque v. FDIC, 42 F.3d 704, 708 (1st Cir. 1994); Smith v. Boyd, 553 A2d 131, 133 (R.I. 1989); Anton v. SBC Global Services, Inc., 2006 WL 2827421 at * 8 (E.D. Mich. 2006).

**Proposed Instruction No. 10: Breach of Contract.**

If, after reviewing the evidence, you conclude the NACEPF and Carter Broadcasting made a contract for Carter to broadcast NACEPF's programming on WRIB for the period from May 2006 through April 2007, the next thing you must consider is whether Carter Broadcasting breached that contract.

In contract law, the term "breach" means that one party did not perform its part of the contract the way it was supposed to. In this case, the parties agree that Carter Broadcasting did not permit NACEPF to broadcast on WRIB beyond July 2006, because it sold the station to Faith at that time. For that reason, if you find that NACEPF and Carter Broadcasting did make a one-year broadcasting contract starting in May 2006, then it is clear that Carter Broadcasting breached the contract. In that event, you must go on to consider the matter of damages, which I will explain in a minute.

If, on the other hand, you find that NACEPF and Carter Broadcasting did not make a broadcasting contract, then Carter could not have breached any contract, and your deliberations are at an end.

**Proposed Instruction No. 11: Contract Damages.**

As I indicated, it is undisputed in this case that Carter Broadcasting did not permit NACEPF to broadcast on WRIB beyond July 2006. Therefore, if you find that NACEPF and Carter made a broadcast contract for the period May 2006 through April 2007, then it is clear that that contract was breached, and you must go on to consider the matter of contract damages. We use the term "damages" to refer to the amount of money that should be awarded to a party that has been harmed when a contract is breached.

A party that is injured by a breach of contract is entitled to be compensated with reasonable damages.

The law says that, when a contract is breached, the breaching party cannot escape liability simply by giving the injured party its money back. Instead, the injured party is entitled to receive damages sufficient to place it in as good a position as it would have been in had both parties fully performed the contract. One way to measure these damages is to determine the extra cost the injured party has to pay in order to obtain the services it was supposed to receive under the contract. In other words, to take our simple example again, let's say I contract with a man named Bill to cut my grass for $10, and I give him $10 to perform that service. On the day he was supposed to perform, Bill doesn't show up at my house, and thereby breaches the contract. To put myself in the same position I would have been in had Bill performed our agreement, I go out and hire another person, named Sam, to cut my grass. But Sam charges me $15, not $10. In this case, my damages against Bill are $15, because that is the amount I had to pay to put myself in the same position I would have been in had Bill performed the job I hired him to do.

In this case, as you have heard, in July 2006 NACEPF was no longer allowed to continue broadcasting on WRIB. After that happened, NACEPF went out and located another radio station, WARL, which agreed to broadcast NACEPF's programs. NACEPF presented testimony from an expert witness, Steven Apel, who offered his opinion of the amount of damages sustained by NACEPF because it is now broadcasting on WARL. NACEPF also presented evidence of certain advertising expenses it incurred to notify the public that it had moved from WRIB to WARL. As jurors, it is your duty to decide what weight to assign to Mr. Apel's testimony and what damages to award to NACEPF if you find that NACEPF and Carter had a one-year broadcast agreement.

Riley v. St. Germain, 723 A.2d 1120, 1122 (R.I. 1999); Hughes Communications Galaxy, Inc. v. United States, 271 F.2d 1060, 1066 (Fed. Cir. 2001).

**Proposed Instruction No. 12: NACEPF's Claim Against Faith.**

That completes my discussion of the legal principles you should consider as you evaluate NACEPF's claim of breach of contract against Carter Broadcasting. I will now discuss the legal claim that NACEPF has asserted against the other defendant in this case, Faith Christian Center, Inc.

The legal claim that NACEPF has asserted against Faith Christian Center has a long name: Intentional interference with contract. What this claim means, in a nutshell, is that according to NACEPF Faith intentionally disrupted the one-year broadcasting contract that NACEPF had with Carter Broadcasting.

In order to prove its claim of intentional interference with contract, NACEPF must prove three things. First, that it had a broadcasting contract with Carter Broadcasting. Second, that Faith Christian Center knew of the existence of this contract. And third, that Faith intentionally interfered with that contract. NACEPF must prove each of these items in order to recover against Faith.

I will now spend a few moments discussing each of these elements with you.

The first thing NACEPF must show is that NACEPF and Carter Broadcasting made a one-year broadcasting contract. When I reviewed with you the breach of contract claim that NACEPF has asserted against Carter Broadcasting, I discussed some of the important legal principles that determine whether two parties have made a contract. You should apply those same principles here. If you determine that NACEPF and Carter Broadcasting had a one-year broadcasting contract, then NACEPF has successfully proven the first item it needs to prove against Faith Christian Center. On the other hand,

if you determine that NACEPF and Carter did not have a contract, then NACEPF cannot prevail on its claim against Faith.

The second item that NACEPF must show to prove its claim against Faith is that Faith knew of the existence of NACEPF's contract with Carter Broadcasting. On this point, you must bear in mind that Faith Christian Center is a corporation. "A corporation can only act through its agents and servants. Hence, their knowledge is imputed to the corporation." McAffrey v. Mossberg & Graville Mfg. Co., 50 A. 651, 652 (R.I. 1901). This means that, if a corporation's agents or employees know something, then their corporation is considered to have the same knowledge. In other words, if any of Faith Christian Center's agents or employees knew of the contract between NACEPF and Carter Broadcasting, then you must conclude that Faith itself knew of that contract.

The third item that NACEPF must show to prove its claim against Faith is that Faith acted intentionally and without justification to disrupt the contract NACEPF had with Carter Broadcasting. In this case, NACEPF alleges that Faith disrupted NACEPF's one-year broadcasting contract with Carter Broadcasting by preventing NACEPF from continuing to broadcast its programs on WRIB after Faith purchased the station from Carter.

Belliveau Building Corp. v. O'Coin, 763 A.2d 622, 627 (R.I. 2000); Banco Totta e Acores v. Fleet Nat'l Bank, 768 F. Supp. 943, 950 (D.R.I. 1991).

**Proposed Instruction No. 13: Damages.**

If you find that NACEPF has proven each of these three items, then NACEPF is entitled to recover damages from Faith. Here, NACEPF contends that it sustained damages when Faith prevented it from continuing to broadcast its programs on WRIB in July 2006.

The nature and amount of damages that NACEPF seeks to recover from Faith is the same as the damages it seeks to recover from Carter. Therefore, the instructions I gave you concerning damages for NACEPF's claim against Carter also apply to NACEPF's claim against Faith.

NORTH AMERICAN CATHOLIC
EDUCATIONAL PROGRAMMING
FOUNDATION, INC.

By Its Attorneys,

/s/ Mark A. Pogue

Mark A. Pogue #3441
EDWARDS ANGELL PALMER &
DODGE LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March, 2008, a copy of the foregoing Plaintiff's Proposed Jury Instructions was served by ECF to the following counsel of record:

David E. Maglio, Esq.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903

/s/ Mark A. Pogue