UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. | : | |
| *Plaintiff* | : | |
| VS. | : | C.A. 06-431ML |
| CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER | : | |
| *Defendants.* | : | |

**PLAINTIFF'S SUPPLEMENTAL INTERROGATORY ANSWERS**

Pursuant to F. R. Civ. P. 26 and by agreement of the parties, plaintiff North American Catholic Educational Programming Foundation, Inc. herewith updates certain of its interrogatory answers.

**INTERROGATORY NO. 5:** If you allege, as set forth in paragraph 11 of the plaintiff's Complaint, that "Faith became aware of the fact that Carter had contracted with the plaintiff", please state all of the facts and the identity of any persons and documents that support your allegations.

**SUPPLEMENTAL ANSWER:** NACEPF understands and believes that Faith became aware of Carter's obligations to persons or entitles with programming or hosting rights on the Station during Faith's due diligence leading up to its acquisition of the Station. In addition, John Primeau sent a letter to Faith (by email and Federal Express) which notified Faith that NACEPF had a broadcasting contract with Carter.

**INTERROGATORY NO. 7:** For each and every oral communication between NACEPF and Carter relating to the facts and allegations contained in the complaint, please provide the following information:

a. the identity of the persons participating in the communication(s);

b. the identity of the persons present during the communication(s);

c. the date(s) of the communication(s); and

d. the subject of the communications.

**SUPPLEMENTAL ANSWER:** In or around 1999, John Primeau and John Pierce had a discussion concerning NACEPF's desire to obtain a written broadcasting contract from Carter, and NACEPF's tendering of a check to Carter for that purpose. The particulars of this conversation are set out in the Affidavit of John Primeau, which was filed in connection with NACEPF's objection to the defendants' motion for summary judgment. NACEPF incorporates that affidavit by reference. In each subsequent year, Mr. Primeau would give Mr. Pierce a NACEPF check to pay for another one-year broadcasting contract. The discussion that occurred between Mr. Primeau and Mr. Pierce on each such occasion are set out in the affidavit of Mr. Primeau, which NACEPF incorporates by reference.

**INTERROGATORY NO. 8:** For each and every oral communication between NACEPF and Faith relating to the facts and allegations contained in the complaint, please provide the following information:

e. the identity of the persons participating in the communication(s);

f. the identity of the persons present during the communication(s);

g. the date(s) of the communication(s); and

h. the subject of the communications.

**SUPPLEMENTAL ANSWER:** According to Faith's Patricia Varner, at or around the time that Faith acquired WRIB from Carter in July 2006, she and John Primeau had an encounter at or around the WRIB property. Ms. Varner's recollection of this encounter – which is admittedly vague – is set out at pages 89-92 of her deposition.

**INTERROGATORY NO. 9:** If you allege, as set forth in paragraph 16 of the plaintiff's Complaint, that "NACEPF will have to pay considerably more than twenty-eight dollars per half hour to find a comparable radio broadcast outlet", please state all of the facts and the identity of any persons and documents that support your allegations.

**SUPPLEMENTAL ANSWER:** As detailed in the expert report prepared by Steven Apel, NACEPF secured broadcasting time on WARL after Faith refused to let it continue on WRIB. WARL initially charged $65 per half hour show. Later, this rate was reduced to $38.57 per half hour show.

**INTERROGATORY NO. 10:** If you allege, as set forth in Count One of the plaintiff's Complaint, that "Carter breached a contract with NACEPF", please provide (a) a detailed recitation of the terms of the contract including the date that the contract was formed, (b) the identity of the person(s) who negotiated the terms of the contract for NACEPF and Carter, (c) the term of the contract, (d) the consideration provided by each party, (e) the promises or performance to which each party contractually bound itself, (f) the manner in which Carter breached the contract, and (g) a detailed itemization of the damages, if any, suffered by NACEPF as a result of Carter's alleged breach of the contract.

**SUPPLEMENTAL ANSWER:** NACEPF claims two types of damages in this case. The first is the increased cost to reach the audience it would have reached on WRIB through the balance of its contract with Carter. These damages are detailed in Steven Apel's report. The other type of damage is the advertising costs NACEPF incurred in publicizing its move to WARL. These costs total $10,450 to date.

**INTERROGATORY NO. 12:** In the July 6, 2006 letter from John Primeau, President of NACEPF to Kenneth Carberry, President of Carter Broadcasting, John Primeau states that, "should our pre-paid asset suffer detriment via the station signal going dark or any other failure to perform the obligations proper to our prepaid asset, then the value easily exceeds the $75,000 threshold value of consideration required to prosecute a rapid decision in the federal courts." With regard to this statement, please state all of the facts and the identity of any persons and documents that support your allegations including in your answer a detailed itemization of your damages.

**SUPPLEMENTAL ANSWER:** The types of damages NACEPF is claiming in this case are described in response to question 10. Steven Apel and John Primeau will testify concerning these claims. NACEPF will present copies of the advertising it has taken out, as well as the Apel report, in support of these claims. NACEPF also asserts that it has suffered a loss of goodwill and customer loyalty because of Carter's breach of contract, but it is not pursuing a money damage claim in connection with that loss.

**INTERROGATORY NO. 13:** Please give the name and present address of each person you expect to call as an expert witness at trial; and with respect to each expert witness, please state:

a) The subject matter on which each expert is expected to testify;

b) The substance of the facts and opinions to which each expert is expected to testify; and,

c) A summary of the grounds for each opinion.

**SUPPLEMENTAL ANSWER:** This information is contained in the expert report prepared by Steven Apel, previously provided to defendants.

**INTERROGATORY NO. 16:** Please provide a computation of each and every category of damages claimed by the plaintiff, making available for inspection and copying the documents or other evidentiary material, on which such computation is based.

**SUPPLEMENTAL ANSWER:** See responses to questions 10 and 12 above.

[signature]
John Primeau

STATE OF RHODE ISLAND )
)ss.:
COUNTY OF PROVIDENCE )

BEFORE ME, the undersigned authority, personally appeared John Primeau, who, being first duly sworn, deposes and says that he has read the foregoing answers to interrogatories and the same are true and correct to the best of his information and belief.

[signature]
Notary Public
My Commission Expires: 4-7-12



PRV 943820.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March, 2008, a copy of the foregoing Plaintiff's Supplemental Interrogatory Answers was served by ~~first class mail, postage prepaid~~ fax to the following counsel of record:

David E. Maglio, Esq.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903

[signature]