UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. | : | |
| *Plaintiff* | : | |
| VS. | : | C.A. 06-431ML |
| CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER | : | |
| *Defendants.* | : | |

**OBJECTION**

Plaintiff North American Catholic Educational Programming Foundation, Inc. hereby objects to defendants' "Motion For An Award Of Reasonable Attorney's Fees."

In support of this motion, the Court is respectfully referred to the accompanying memorandum and affidavits.

NORTH AMERICAN CATHOLIC
EDUCATIONAL PROGRAMMING
FOUNDATION, INC.

By Its Attorneys,

/s/ Mark A. Pogue

Mark A. Pogue #3441
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2008, a copy of the foregoing Objection was served by ECF to the following counsel of record:

David E. Maglio, Esq.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903

/s/ Mark A. Pogue

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

NORTH AMERICAN CATHOLIC EDUCATIONAL PROGRAMMING FOUNDATION, INC. :

*Plaintiff* :

VS. : C.A. 06-431ML

CARTER BROADCASTING CORPORATION and FAITH CHRISTIAN CENTER :
*Defendants.* :

**MEMORANDUM IN SUPPORT OF NACEPF'S OBJECTION**
**<u>TO DEFENDANTS' MOTION FOR AN AWARD OF ATTORNEY FEES</u>**

Not content with the favorable jury verdict they received, Carter Broadcasting Corporation and Faith Christian Center, Inc. ("Defendants") now seek an award of $76,152 in attorney fees against NACEPF. Defendants' motion is untimely and frivolous, and runs roughshod over the procedures intended to guard against the abuse of Rule 11 sanctions motions. For any or all of the reasons given below, Defendants' motion should be denied on its face, and the Court should award NACEPF the attorney fees it has incurred in resisting this completely baseless motion.[1]

---

[1]NACEPF believes that Defendants' motion itself violates Rule 11. NACEPF has therefore prepared a motion for sanctions against Defendants pursuant to that Rule. In accordance with the requirements set out in Rule 11, on May 19, 2008 NACEPF served this motion on Defendants' counsel, but did not file it. NACEPF has advised Defendants that, in accordance with Rule 11, it will file its motion for sanctions unless Defendants withdraw their motion for an award of attorney fees within 21 days. NACEPF suggests that, before scheduling any hearing on Defendants' motion, the Court wait to see whether Defendants withdraw their motion within the next 21 days.

Whether or not Defendants withdraw their motion, NACEPF seeks an order directing Defendants to reimburse NACEPF for the reasonable attorney fees and expenses it has incurred in defending Defendants' untimely, defective and frivolous motion. <u>See</u> Part X, <u>infra</u>.

**Factual Background**

NACEPF filed this action in Providence County Superior Court. Defendants removed the action to this Court. In their Answer, filed in October 2006, Defendants asserted eight affirmative defenses. Among them was the following statement:

> The plaintiff's complaint should be dismissed and sanctions should be imposed against the plaintiff because the lawsuit was filed in violation of Rule 11 of the Federal Rules of Civil Procedure. The complaint is not factually well-grounded, not legally tenable and was interposed for an improper purpose of harassing the defendants and causing them to incur time and legal fees in defending this frivolous and vexatious lawsuit.

For the next 18 months, until their motion for attorney fees was filed on April 28, 2008, Defendants made no further mention of Rule 11. They never sent NACEPF an unsigned version of their Rule 11 motion, as the Rule requires. They never indicated that they would file a Rule 11 motion unless NACEPF withdrew its lawsuit within 21 days, as the Rule requires.

In December 2007, Defendants moved for summary judgment. The Court denied this motion from the bench on March 3, 2008.

The trial began on April 8, 2008. At the conclusion of NACEPF's case, Defendants moved, pursuant to F. R. Civ. P. 50, for judgment as a matter of law. The Court took this motion under advisement and allowed the trial to continue.

At the conclusion of all the evidence, Defendants renewed their motion for judgment as a matter of law. The Court took this motion under advisement and allowed the case to go to the jury.

The jury returned a verdict for Defendants on April 11, 2008. On the same day the verdict was returned, the Court denied Defendants' Rule 50 motion and entered judgment for Defendants.

Defendants filed the instant motion on April 28, 2008 – 17 days after judgment was entered.

## Argument

Defendants' motion for attorney fees should be denied because it is untimely, procedurally defective, and frivolous.

### I. The Motion Should Be Denied Because It Is Out Of Time

Local Rule Cv. 54.1(a) states as follows:

> Unless otherwise ordered by the Court or provided by law, a party seeking an award of attorneys' fees that are not an element of damages to be proven at trial shall serve and file a motion for attorneys' fees not later than fourteen (14) days after the entry of judgment. Except for good cause shown, failure to file a motion within that time shall be deemed a waiver of any claim for attorneys' fees.

"Any parties who fail to observe local rules of the district in which they practice do so at their own peril." Ashley v. Paramount Hotel Group, Inc., 451 F.Supp.2d 319, 323 (D.R.I. 2006). Here, Defendants' motion for attorney fees was not filed until April 28, 2008 – 17 days after judgment was entered. Defendants have made no attempt to show good cause for the fact that their motion is untimely. As a consequence, pursuant to the Local Rule, Defendants have waived their claim for attorney fees. Their motion must be dismissed on this basis alone.[2]

---

[2] It is no answer for Defendants to contend that Local Rule Cv 54.1(a) is invalid because it conflicts with F.R.Civ. P. 54(d). There is no conflict. Rule 54(d)(2)(B) requires that motions to recover attorney fees be presented within 14 days after judgment is entered. Rule 54(d)(2)(E) then erases this deadline, and indicates that where fees are sought as sanctions – as here – the deadline contained in Rule 54(d)(B) is not applicable. Local Rule Cv 54.1 simply restores the 14-day deadline rendered inapplicable by Rule 54(d)(2)(E). The Local Rule must therefore be observed. As a leading commentator has stated:

> If Rule 54(d)(2) is inapplicable, the fee motion should be filed within the time limits established by any local rules. The failure to file within the time permitted by the local rules is sufficient ground to deny the motion for fees.

10 Moore's Federal Practice, § 54.151[2][c] (Matthew Bender 3rd ed.) (emphasis added). Accord, Quick v. Peoples Bank, 993 F.2d 793, 798-99 (11th Cir. 1993) (denying attorney fee petition because untimely under Local Rule); Schake v. Col Indus. Operating Corp. Sev. Plan, 960 F.2d 1187, 1191-92 (3rd Cir. 1992 (same).

**II. The Motion Should Be Denied Because Defendants Failed To Follow The Procedures For Seeking A Recovery Of Fees Under Rule 11**

Rule 11 contains a "safe harbor" provision intended to give a party accused of violating the Rule 21 days to withdraw the offending filing before the sanctions motion is actually filed. "This 'safe-harbor' provision is a mandatory procedural requisite. Sanctions imposed without compliance are subject to reversal." 11 Moore, supra at § 11.22[1][b] (citing cases).

To implement the "safe harbor" or warning period, the party alleging a Rule 11 violation must serve its motion for sanctions on the other party at least 21 days before filing the motion. It is imperative that the actual motion be served on the accused party.[3] Courts have repeatedly held that warning letters, oral warnings, or other indications that a party is contemplating the filing of a Rule 11 motion do not satisfy the Rule's requirement that the actual sanctions motion be served at least 21 days before it is filed. See, e.g., Roth v. Green, 466 F.3d 1179, 1192-93 (10th Cir. 2006) (rejecting argument that warning letter satisfied safe-harbor requirement; "the plain language of subsection (c)(1)(A) requires a copy of the actual motion for sanctions to be served…The reason for requiring a copy of the motion itself, rather than simply a warning letter, to be served on the allegedly offending party is clear."); Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998) (rejecting claim that informal warnings satisfied Rule 11's safe harbor clause; "the

[3] The Advisory Committee Note to the 1993 amendment to Rule 11 states as follows:

> These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation…To stress the seriousness of a motion for sanctions… the revision provides that the "safe harbor" period begins to run only upon service of the motion.

Adv. Comm. Note to the 1993 amendment of Rule 11 ("1993 Note"), reprinted at 146 F.R.D. 577, 591 (emphasis added). Accord, Wright & Miller, Federal Practice and Procedure: Civil 3d § 1337.2 ("the safe harbor period begins to run only upon service of the proposed Rule 11 motion upon the party against whom sanctions are sought.").

Rule requires service of a motion."); In re Pratt, 2008 WL 933633* 4 (5th Cir. 2008) (informal warnings insufficient) (citing cases); Nortice v. Providian Financial Corp., 283 F.Supp 2d 1084, 1087 (D. Minn. 2003) (same).

Here, Defendants failed to serve their motion for sanctions before filing it. Because they failed to follow the procedural requisites of Rule 11, their motion must be denied.

Defendants argue that they complied with Rule 11 because they "warned NACEPF in their answer that they would be seeking Rule 11 sanctions if the complaint was not withdrawn." Def. Motion, p. 3. This is preposterous. The "warning" Defendants allude to consists merely of a boilerplate affirmative defense (buried among seven other affirmative defenses) in which Defendants complain that NACEPF's Complaint violates Rule 11 because it is "frivolous and vexatious." See supra at 2. If, as courts have repeatedly held, explicit warning letters do not satisfy the requirement of serving a Rule 11 motion first, then a fleeting reference to Rule 11 in an affirmative defense certainly does not.

Because of its striking similarity to this case, In re Caskie-Johnson, 2007 WL 496675 (D. Colo. 2007), is particularly instructive on this point. There, as here, defendant included in its Answer a statement that the plaintiff's Complaint was "frivolous, groundless and/or vexatious." Id. at * 3. There, as here, defendant prevailed at trial. There, as here, the defendant then moved for sanctions under Rule 11, arguing that the affirmative defense in its Answer satisfied Rule 11's safe harbor requirement.

The district court rejected this "ambush" tactic and denied the Rule 11 motion:

> [T]o permit a party to make a brief prayer for sanctions in its answer – or any other prejudgment filing – that may be "renew[ed]" by post-trial motion for sanctions would undermine Rule [11]'s safe harbor. . . . [It] would encourage litigants to slip a seemingly inconsequential sanctions request into a filing and then, if the case were to proceed to trial and if the trial were to go

> particularly well for one side, the prevailing party would be free to then ambush the losing party with a sanctions motion colored in the most favorable light of hindsight. Such a course would subvert the policies behind the safe harbor provision.

Id. at * 4.

The foregoing authority makes clear that Defendants failed to comply with Rule 11's safe harbor provisions. The motion should be denied on that basis alone.[4]

**III. The Motion Should Be Denied Because It Fails To Describe The Specific Conduct That Allegedly Violates Rule 11**

Rule 11 requires that any motion for sanctions must "describe the specific conduct that allegedly violates Rule 11(b)(2)." As the 1993 Note specifies, "Explicit provision is made for litigants to be provided notice of the alleged violation and an opportunity to respond before sanctions are imposed."

Here, as noted, Defendants contend that an affirmative defense in their Answer satisfies the 21-day "safe harbor" provision in Rule 11. But that affirmative defense does not "describe the specific conduct that allegedly violates Rule 11(b)(2)." It merely complains, in conclusory terms lifted from the text of the Rule itself, that the lawsuit filed by NACEPF was frivolous. See supra at 2. For this reason also, Defendants have failed to follow the procedures under Rule 11.

**IV. The Motion Should Be Denied Because Defendants Failed To File It Promptly**

The 1993 Note specifies that Rule 11 motions should be filed "promptly" after discovery of the allegedly inappropriate conduct. Consistent with this directive, the courts have

[4] Defendants also seek to excuse their failure to follow Rule 11's procedures by citing Cardillo v. Cardillo, 360 F. Supp.2d 402, 419, ( R.I. 2005), for the proposition that "courts have held that Rule 11's safe harbor provision is satisfied where counsel for the moving party warns the offending party in writing that sanctions will be sought." Def. Motion at 3. This argument distorts the holding of Cardillo. The Cardillo court noted that the plaintiff there had not complied with Rule 11's procedures, but found that, in any event, sanctions could be awarded under 28 U.S.C. § 1447(c). Id. at 419, n.16. The court therefore did not hold, as Defendants suggest, that noncompliance with Rule 11's procedures is excusable. To the extent that Cardillo does so hold, it is clearly out of step with the 1993 Note, the commentators, and the great number of cases holding to the contrary.

held that such motions should be filed "as soon as practicable after discovery of a Rule 11 violation." Kaplan v. Zenner, 956 F.2d 149, 150, 151 (7th Cir. 1992). Or, as a leading commentator has stated:

> a party who believes that he or she is being subjected to sanctionable behavior has a duty to mitigate costs and to prevent his opponent's behavior from having unnecessary or excessive consequences . . . This means that the party who seeks sanctions must attempt to terminate the allegedly frivolous litigation promptly and cannot run up excessive time or expense in responding to papers thought to violate Rule 11.

Wright & Miller, Federal Practice and Procedure: Civil 3d § 1336.3 (citing cases).

Defendants violated this rule as well. According to Defendants, it was the filing of NACEPF's lawsuit on September 18, 2006 which violated Rule 11. But Defendants did not file their sanctions motion "promptly" after the lawsuit was filed. On the contrary, they did not file their sanctions motion until April 28, 2008 – more than 19 months after the supposed Rule 11 violation occurred. As they sat on their hands during this period, of course, Defendants were steadily running up their claim for attorney fees. This is exactly what the Rule forbids.

Defendants' inordinate delay in filing their sanctions motion reveals their uncertainty about whether NACEPF violated Rule 11. If Defendants truly thought that NACEPF's lawsuit constituted a violation of Rule 11, they would have filed their sanctions motion shortly after the suit was filed. Instead, Defendants took a "wait and see" approach, building their attorney fees over the course of 19 months in hopes that some development in the case would finally give them a basis on which they could move for sanctions with a straight face. It was not until the jury returned a defense verdict that Defendants felt confident enough about their position to actually file their motion.

Rule 11 does not countenance such a "wait and see" approach. Sanctions motions must be filed "promptly." For this reason also, the motion should be denied.[5]

**V. The Motion Should Be Denied Because NACEPF Defeated Defendants' Summary Judgment Motion**

Although Defendants waited for 19 months before filing their Rule 11 motion, they apparently did not use that time to review the 1993 Note. If they had, they would have learned that a Rule 11 motion became impossible once NACEPF defeated Defendants' motion for summary judgment.

Defendants' request for sanctions is based on their belief that NACEPF's lawsuit lacked any evidentiary support. See Def. Motion at 5 ("NACEPF had absolutely no reasonable factual basis to bring its complaint.") Rule 11 does indeed permit the imposition of sanctions where a court filing has no evidentiary support. Rule 11(b)(3).

The 1993 Note, however, makes clear that if a party defeats a summary judgment motion, then by definition its allegations had sufficient evidentiary support for purposes of Rule 11:

> That summary judgment is rendered against a party does not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position. On the other hand, if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient "evidentiary support" for purposes of Rule 11.

1993 Note (emphasis added). Accord, McGill v. Seminole Club, Inc., 2007 WL 2066297 (M.D.Fla. 2007) at * 4 (rejecting request for sanctions under Rule 11 because accused party's evidence "would likely have been sufficient to defeat a motion for summary judgment"; citing 1993 Note).

[5] In any event, the fact that the jury ultimately sided with Defendants says nothing about whether NACEPF's lawsuit was sanctionable. "Lack of success on a claim is not a basis for imposing sanctions." Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 2003 WL 21355212 *1 (S.D.N.Y. 2003).

The language of F. R. Civ. P. 56 supports this conclusion. Rule 56 specifies that summary judgment may only be granted when there is no "genuine issue of material fact." When a summary judgment motion is denied, that means that the opposing party has demonstrated the existence of at least one genuine issue of fact requiring resolution by the factfinder. And if there is a genuine issue of fact, it can hardly be said that the opposing party's position is factually baseless.

Here, NACEPF defeated the summary judgment motion filed by both Defendants. (Defendants do not mention this inconvenient fact in their sanctions motion.) The 1993 Note makes clear that, because NACEPF defeated the summary judgment motion, its position had "sufficient evidentiary support for purposes of Rule 11." Defendants' motion must be denied on this ground alone.

## VI. The Motion Should Be Denied Because NACEPF Defeated Defendants' Rule 50 Motion

At the conclusion of NACEPF's case in chief, and again at the conclusion of all the evidence, the Defendants moved for judgment as a matter of law pursuant to F. R. Civ. P. 50. The Court did not grant either motion. Instead, it took them under advisement and, in each case, allowed the trial to continue. This is still another reason why, as a matter of law, Defendants' accusation that NACEPF had "absolutely no reasonable factual basis to bring its claim" must fail.

When a Rule 50 motion is filed, "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury might reasonably find a verdict for that party." Wright & Miller, Federal Practice and Procedure: Civil 3d § 2524. Here, if the Court had believed that NACEPF's claim was so bereft of evidentiary support that a reasonable jury could not have found for NACEPF, it

would have granted Defendants Rule 50 motions at the time they were asserted, and terminated the trial. The fact that the Court did not do so confirms that NACEPF's claims had sufficient evidentiary support for purposes of Rule 11.

### VII. The Motion Should Be Denied Because Defendants Have Not Provided A Proper Supporting Affidavit

Local Rule Cv 54.1(b)(2) provides as follows:

> Unless otherwise permitted by the Court, a motion for attorneys' fees also shall be accompanied by an affidavit regarding the reasonableness of the requested hourly fee from a disinterested attorney admitted to practice in Rhode Island who is experienced in handling similar cases and familiar with the usual and customary charges by attorneys in the community who have comparable experience in similar cases.

"Any parties who fail to observe local rules of the district in which they practice do so at their own peril." Ashley v. Paramount Hotel Group, Inc., 451 F.Supp.2d 319, 323 (D.R.I. 2006). Here – once again – Defendants have failed to follow the local rules. Their fee petition is not supported by an affidavit from "a disinterested attorney." For that reason also, Defendants' motion should be denied.

### VIII. The Motion Should Be Denied Because NACEPF's Conduct Did Not Violate Rule 11

Even if the multitude of procedural defects discussed above could be ignored, Defendants' motion would have to be denied. That is because its substance – the reasons why Defendants contend the NACEPF lawsuit was frivolous – falls miles short of the standard needed to justify relief under Rule 11.

#### A. The Lawsuit Was Not Filed Because Of An Improper Motive

Defendants announce that NACEPF filed this action "purely out of [Primeau's] displeasure with the buyer and its religious denomination. Primeau's anger that WRIB 1220 was sold to Faith Christian Center, a non-denominational group, as opposed to a Roman Catholic

organization like NACEPF, fueled NACEPF's actions in filing the complaint." Def. Motion, p. 5. To support this accusation, Defendant's submit an affidavit from Kenneth Carberry in which he alleges that Primeau stated: "I would never have done all of this if it hadn't been for the church." Carberry Aff., ¶ 8.

This allegation is ridiculous. Defendants are not psychologists. Their amateurish conclusion that NACEPF's lawsuit was filed because of "Primeau's anger" that a non-Catholic group purchased WRIB is not only offensive, but would be laughable were it not asserted in a sanctions motion. In fact, nothing in the record supports Defendants' accusation. Carberry's recollection and interpretation of what Primeau said after the trial is wrong. Primeau was attempting to be conciliatory. What he expressed was that, if Faith Christian Center had allowed the WRIB broadcasters to remain on the air (as Faith initially told John Pierce it would), then it would not have disrupted NACEPF's broadcast contract, obviating the need for a legal action. See Affidavit of John Primeau Aff., ¶ 3. Carberry either misunderstood or purposely distorted Primeau's well-meaning comment.[6]

In still another personal attack on Primeau, Defendants assert that his "enthusiasm for being a plaintiff in lawsuits: led to the filing of this action. Def. Motion, p. 7. This attack is equally specious. The "evidence" Defendants offer in support of their accusation – taken from Primeau's pretrial deposition, no less – demonstrates no "boastful" behavior by Primeau, but

[6] Moreover, Defendants' own trial evidence also belies their speculation that NACEPF sued because of Primeau's anger that a non-Catholic group purchased WRIB. At trial, John Pierce related that, in 1999, Primeau told him that even though it appeared that a Catholic group was purchasing WRIB, that group was likely to dismiss NACEPF from the station. Because Primeau did not believe a Catholic purchaser would retain NACEPF on WRIB, it is hardly plausible that Primeau would be "angry" because a non-Catholic group purchased the station.

merely that he answered the questions put to him.[7] That Defendants would distort deposition testimony that was not even a part of the trial underlines the bankruptcy of their motion.

### B. There Was Ample Evidence To Support The Lawsuit

Defendants quote and highlight the following trial testimony from Primeau:

> Q: And, in fact, we can agree that it's undisputed that Mr. Pierce said, I cannot provide you with that written [broadcast] contract?
> A: Yes, he said he could not get me a broadcast contract. Right.

Defendants boast that this exchange proves that "Primeau was well aware that no contract had been formed between NACEPF and Carter." Def. Motion, p. 6. In fact, Defendants' argument proves only that they don't understand implied-in-fact contracts. It was undisputed at trial – as Primeau's testimony here confirms – that in 1999, Pierce declined to provide a "written [broadcast] contract" to NACEPF. But this case was not about whether a written contract existed in 1999. It was about whether an implied-in-fact contract existed in 2006. And there was an abundance of evidence indicating that there was: Ken Carberry's decision, after being fully informed of NACEPF's desire for a contract for future broadcasts, to cash NACEPF's check marked "contracted thru 3/00"; Pierce's provision of a receipt reflecting NACEPF's purchase of future programs; and the annual ritual followed by the parties from 2000-2006 whereby each

---

[7] This is Defendants' evidence that Primeau is "enthusiastic" and "boastful" about being a plaintiff:

> Q. Okay. And I take it you've been deposed before, correct?
> A. Certainly.
>
> Q. And in what matter have you been deposed in [sic]?
> A. I've been deposed by Sprint Corporation.
>
> * * *
>
> Q. Do you anticipate being deposed in the Goldman Sachs matter?
> A. Absolutely.
>
> Q. Are you looking forward to it?
> A. I'm the plaintiff.

Def. Motion, p. 7.

year Carter cashed NACEPF's check, all the while understanding that the check was intended to pay for future broadcasts.[8]

Defendants also contend that NACEPF had no grounds to sue Faith. They base this on Primeau's concession that he did not know whether Faith knew of NACEPF's claimed broadcast contract "prior to July 6th of 2007." Def. Motion, pp. 6-7.

This attack reflects more confusion by Defendants about the legal issues in this case. Why does it matter what Faith knew "prior to July 6th of 2007"? Faith acquired WRIB on July 7, 2007. Thus, the only relevant question is whether Faith knew of NACEPF's claimed contract before that date. The trial testimony established that it did.[9] Primeau's testimony – that he did not know what Faith knew "prior to July 6th of 2007" – was perfectly honest, and perfectly consistent with this evidence. To NACEPF's knowledge, Faith did not learn of the NACEPF contract prior to July 6, 2007. It learned of the contract on July 6, 2007, when NACEPF faxed and emailed its letter.

In sum, Defendants have fallen woefully short of demonstrating that NACEPF's lawsuit was either factually baseless or filed for an improper purpose.

## IX. The Motion Fails To Demonstrate That The Court Should Use Its Inherent Authority To Award Fees Against NACEPF

Undoubtedly concerned that their Motion cannot succeed under Rule 11, Defendants offer a fall-back rationale for their fee request: the Court's inherent authority to award fees against a party which has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons."

[8] NACEPF's annual payments of approximately $14,560 could hardly have been overlooked by WRIB. The payments likely constituted a significant portion of WRIB's net income, and undoubtedly covered many of its expenses.

[9] The testimony of David Marquard, which was read into the record, established that Faith received NACEPF's letter dated July 6, 2007 before it closed on the acquisition of WRIB. NACEPF's letter asserted that it had a broadcast contract with Carter. According to Marquard, Faith discussed NACEPF's letter with its lawyers, who advised Faith to proceed with the transaction notwithstanding the letter.

Dubois v. U.S. Dept. of Agriculture, 270 F.3d 77, 80 (1st Cir. 2001) (citation omitted). In their discussion of the legal standard applicable to this aspect of their Motion, Defendants carefully fail to note how rarely such relief is appropriate:

> Because of its potency, however, a court's inherent power to shift attorney fees should be used sparingly and reserved for egregious circumstances. Thus, the power to sanction must be used with great circumspection and restraint, employed only in compelling situations.

Dubois, supra, 270 F.3d at 80 (citations and quotation marks omitted); cf. Def. Motion at 4.

For the reasons given above, NACEPF's lawsuit does not present an "egregious" case of vexatious conduct. Defendants themselves did not have enough confidence to file their motion for sanctions until 19 months after the lawsuit was filed, preferring instead to wait and see if they would prevail at trial. This Court denied Defendants' summary judgment motion, and then allowed the case to go to the jury despite Defendants' Rule 50 motions. And, as the discussion in Part VIII above makes clear, the arguments Defendants present to demonstrate their contention that NACEPF's action was frivolous are feeble, at best.

## X. The Court Should Direct Defendants To Reimburse NACEPF For The Fees And Expenses It Has Incurred In Opposing Defendants' Motion

Rule 11 provides as follows: "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney fees, incurred for the motion." As the 1993 Note explains:

> [T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions. However, service of a cross motion under Rule 11 should rarely be needed since under the [1993] revision the court may award to the person who prevails on a motion under Rule 11 -- whether the movant or the target of the motion -- reasonable expenses, including attorney's fees, incurred in ... opposing the motion.

Accord, Robinson v. City of San Bernardino Police Dep't, 992 F. Supp. 1198, 1208 (C.D. Cal. 1998) (awarding costs to defendant of responding to plaintiff's frivolous request for sanctions).

Here, as noted in footnote one above, NACEPF has served an unsigned Rule 11 motion on Defendants, pursuant to the safe harbor provisions of the Rule. Although the 1993 Note indicates that filing a cross-motion for sanctions in response to a frivolous sanctions motion is not strictly necessary, NACEPF served its motion in the hope that it will encourage Defendants to withdraw their frivolous motion. Withdrawal of Defendants' motion will prevent NACEPF from incurring further attorney fees in defending it.

As the text of the Rule indicates, this Court may award the "prevailing party" its fees and expenses. Thus, whether or not Defendants withdraw their motion, NACEPF asks this Court to award it the reasonable fees and expenses it has incurred in defending Defendants’ motion, which totals $7,686.[10] The reasons why such an award is warranted should by now be obvious: Defendants' motion is out of time; it is procedurally defective on many different grounds; and it is substantively frivolous. The motion should never have been filed, and NACEPF should never have been put to the expense of opposing it.

---

[10]In accordance with Local Rule CV 54.1, NACEPF is filing herewith an affidavit attesting to the fees incurred in responding to Defendants' motion, and a declaration from a disinterested local attorney attesting to the reasonableness of the hourly rate charged by NACEPF's counsel.

## Conclusion

For the foregoing reasons, Defendants' Motion should be denied and the Court should direct Defendants to reimburse NACEPF $7,686 in attorney fees.

NORTH AMERICAN CATHOLIC
EDUCATIONAL PROGRAMMING
FOUNDATION, INC.

By Its Attorneys,

/s/ Mark A. Pogue
Mark A. Pogue #3441
EDWARDS ANGELL PALMER & DODGE LLP
2800 Financial Plaza
Providence, RI 02903
Tel. 401-274-9200
Telecopy 401-276-6611

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of May, 2008, a copy of the foregoing Memorandum of Law In Support Of NACEPF's Objection To Defendants' Motion For An Award of Attorney Fees was served by ECF to the following counsel of record:

David E. Maglio, Esq.
The Owen Building
101 Dyer Street, Second Floor
Providence, RI 02903

/s/ Mark A. Pogue